UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:09-cr-158 |
| | ) | MATTICE/CARTER |
| CHRISTOPHER B. JACK | ) | |

REPORT AND RECOMMENDATION

I. Introduction

Defendant's Motion to Suppress (Doc. 18) is pending before the undersigned Magistrate Judge having been referred by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Defendant Christopher Jack seeks to suppress evidence found at his father's residence and statements he made to police following their search of his father's residence. Because the plaintiff has no reasonable expectation of privacy in the place searched, it is RECOMMENDED that portion of his motion seeking to suppress evidence found at the premises be DENIED. Because some of defendant's statements were made after defendant voluntarily and knowingly waived his *Miranda* rights and some were made after he revoked his waiver, it is RECOMMENDED that portion of defendant's motion seeking to suppress his statements be DENIED in part and GRANTED in part.

II. Relevant Facts

The undersigned held an evidentiary hearing on Defendant's motion to suppress on April 27, 2010. The government presented two witnesses, Eric Allman and Dax McGowan, and based on their testimony the undersigned makes the following findings: Eric Allman has been an agent with the Tenth Judicial Drug Task Force (Task Force) for the past five years. Prior to his service

1

with the Task Force, he worked as a patrolman with the City of Cleveland, Tennessee and the City of Etowah, Tennessee. He has a total of thirteen years in law enforcement. Dax McGowan has been an agent with the Task Force for the past three years and prior to that he was employed by the Cleveland Police Department for six years.

Agent Allman was the case agent for the investigation leading to the defendant's arrest. He also prepared the search warrant affidavit for the premises to be searched at 246 County Road 467, Englewood, Tennessee.

On September 9, 2009, in the late afternoon, Task Force agents wearing police tactical gear and occupying three vehicles went to the premises to execute the search warrant. Agent Allman and Agent Dax McGowan traveled in the same van. Agent McGowan, carrying a shield, exited the van first and Allman followed. Outside the van they observed the defendant standing next to another person in the yard. The defendant started running to the back of the house to a stand of woods. Allman and McGowan identified themselves as police and ordered defendant to stop. He did not. As defendant ran toward the woods, he pulled a metal object the officers believed to be a gun from his waistband. The defendant entered the woods, and the officers, declining to follow at that time, went to the residence to secure it.

The officers found the defendant's father and a woman inside the house and another man outside on the premises. After securing the house and a recreational vehicle (RV) on the property, Allman and McGowan went into the wooded area to look for the defendant. Following a path which ends at a creek, they observed a boot print in the mud. They followed the prints down the creek until Allman, looking over the high lip of the bank, spied the defendant's leg coming from underneath the bank. Allman shouted at the defendant to come out and show his

hands. When the defendant did not comply, McGowan jumped into the creek. As he approached the defendant, McGowan told him to show his hands and get out of the creek. The defendant showed his hands but then tried to go back under the lip of the bank. McGowan forcibly pulled the defendant away from the bank. McGowan attempted to put his knee in between defendant's shoulder blades to prevent defendant from rising, but defendant was struggling and McGowan accidentally hit the defendant in the side of the face with his knee. During the course of the apprehension, defendant spit out a pill which he later said was hydrocodone. Upon a further search, Allman and McGowan founded a loaded pistol, safety off, jammed into the muddy side of the creek bank at the spot where the defendant had been hiding; a cell phone; and a knife in the defendant's back pocket. Allman estimated about an hour and a half elapsed from the time law enforcement arrived at the premises to the time they apprehended the defendant.

     As Allman, McGowan, and the defendant walked back to the house, Allman asked the defendant if he would like a change of clothes since the defendant was wet. The defendant said he would and instructed that Allman could find a change of clothes in the RV. They went back to the RV and retrieved a dry set of clothes for the defendant. Allman, McGowan and defendant then walked into the house where the defendant changed and ate some cookies or chips and drank some water. They also gave the defendant some cigarettes.

     After getting the defendant something to eat and drink, Allman read aloud to the defendant his Miranda rights from a written form. He asked the defendant if he understood them and the defendant indicated that he did. The defendant then signed the Waiver of Rights form in front of Allman and McGowan. McGowan also signed the form as a witness. No threats or promises were made to entice the defendant to speak. No guns were drawn and the conversation

was quiet and cordial. Allman, who conducted most of the interview, was wearing his firearm but he did not draw it during the interview. During the interview, other officers walked through the room occasionally.

Allman asked the defendant several questions, and he responded appropriately. At one point, Allman asked the defendant if he actually cooked meth and the defendant responded, "I plead the fifth." Allman then asked him if there were other drugs on the premises. The defendant said he had smoked the last of the methamphetamine a little while earlier and they would find the remnants of tinfoil he used for that purpose in the RV.

Agent Allman testified he has seen many suspects under the influence of alcohol or drugs during the course of his career and the defendant did not appear under the influence of alcohol or drugs, defendant's behavior was not consistent with someone who was high. During the interview, the defendant was very pleasant and thanked the officers for treating him so well stating that the police did not usually treat him so well. After making his statement, the defendant was taken to the Marion County Detention Center.

There were emergency medical personnel on standby when the search warrant was executed. While it isn't clear whether the emergency medical personnel saw the defendant before or after his interview, they did check him on the premises and determined he did not need medical treatment though he had some bruises on the side of his face.

During the search of the RV, several guns including a pistol were found. More guns were found in the main residence. Some items were also taken from a burn pile behind the house, and six or seven marijuana plants in 5 gallon buckets were found along the path to the creek.

Allman testified defendant's father holds title to the property in question and he did not know who owned the RV. At the time the search warrant was executed, Allman knew the defendant had at least one felony conviction.

### III. Analysis

*A. The Search at 246 County Road 467, Englewood, Tennessee*

Defendant argues that the search warrant affidavit used to obtain the search warrant for the premises at 246 County Road 467, Englewood, Tennessee fails to set forth probable cause and therefore the search warrant was invalid. Before the undersigned reaches this issue, however, I must first look at whether the defendant had a reasonable expectation of privacy in the premises searched.

In his motion to suppress and his memorandum in support thereof, the defendant states at least three times that he does not reside at 246 County Road 467, Englewood, Tennessee. *See e.g.,* "To repeat, Defendant was not a resident of the property to be searched." (Memorandum in Support of Motion to Suppress at 4-5; *see also* Motion to Suppress at 1, Memorandum in Support at 5 and 6).

"'It is well-established that a defendant claiming that a search violated his Fourth Amendment rights has the burden of demonstrating that he had a legitimate expectation of privacy in the place that was searched.'" *United States v. Mastromatteo*, 538 F.3d 535, 544 (6th Cir. 2008) (quoting *United States v. Talley*, 275 F.3d 560, 563 (6th Cir.2001)). Absent a legitimate expectation of privacy in the premises searched, the Fourth Amendment offers no protections to the defendant against police intrusions into the premises searched. *See United States v. Hunyady*, 409 F.3d 297, 300 (6th Cir. 2005) (the "capacity to claim the protection of the Fourth Amendment

depends upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.") (quoting *Rakas v. Illinois* , 439 U.S. 128, 143 (1978)).

To establish a legitimate expectation of privacy, a defendant must satisfy a two-pronged test: 1) he must manifest an actual, subjective expectation of privacy, and 2) that expectation must be one that society is prepared to recognize as legitimate." *United States v. Whitehead*, 415 F.3d 583, 587 (6th Cir. 2005) (citing *United States v. Pollard*, 215 F.3d 643, 647 (6th Cir.2000)).

In the instant case there is a dearth of evidence to support a legitimate expectation of privacy. Defendant has vehemently asserted he was not residing on the property at the time of the search. *See e.g.,* "Defendant, the purported target of this investigation, has not lived with his father for some time, and his correct address was readily available through court records." (Memorandum in Support of Motion to Suppress at 5.)

Even though the defendant does not reside at the premises in question, he could still assert a legitimate expectation of privacy if he were an overnight guest in his father's home. *Minnesota v. Olson,* 495 U.S. 91 (1990).

> To hold that an overnight guest has a legitimate expectation of privacy in his host's home merely recognizes the every day expectations of privacy that we all share. Staying overnight in another's home is a longstanding social custom that serves functions recognized as valuable by society. We stay in others' homes when we travel to a strange city for business or pleasure, when we visit our parents, children, or more distant relatives out of town, when we are in between jobs or homes, or when we house-sit for a friend ....
>
> From the overnight guest's perspective, he seeks shelter in another's home precisely because it provides him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside. We are at our most vulnerable when we are asleep because we cannot monitor our own safety or the security of our belongings. It is for this reason that, although we may spend all

day in public places, when we cannot sleep in our own home we seek out another private place to sleep, whether it be a hotel room, or the home of a friend.

*Olson*, 495 U.S. at 98-99.

We know that the property belonged to defendant's father and that defendant knew there were some clothes in the RV that he could wear. Nevertheless, these two facts alone do not establish that the defendant was an overnight guest. The clothes could be his father's clothes. Even if the clothes were his, that fact would not establish he was an overnight guest. At most, the evidence suggests defendant was a casual, temporary visitor at his father's house on the day the search warrant was executed. "[A]n overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not." *Minnesota v. Carter*, 525 U.S. 83, 90 (1998), *see also*, *United States v. Harris*, 255 F.3d 288, 294-95 (6th Cir. 2001) ("Although an overnight guest may possess a legitimate expectation of privacy in a residence being searched, a temporary visitor to a residence may claim no such protection." *United States v. Plavcak*, 411 F.3d 655, 665 (6th Cir. 2005) ("It is well-settled that a person has no reasonable expectation of privacy where he is neither a resident nor an overnight guest in a residence."); *United States v. Buckner,* 717 F.2d 297, 300 (6th Cir. 1983) (Parent-child relationship did not imbue adult son with legitimate expectation of privacy in his mother's apartment where he did not reside with her and was not an overnight guest in her apartment); *United States v. Love*, 70 F.3d 116, 1995 WL 675562 *1, *4 (6th Cir. Nov.13, 1995) (holding that defendant did not have a legitimate expectation of privacy in his mother's house because he moved out six months before the search and was not an overnight guest)(unpublished).

If the defendant were there to conduct business involving methamphetamine, then defendant would not have a legitimate expectation of privacy either. *Minnesota v. Carter*, 525 U.S. 83 (1998). The undersigned concludes the defendant has not met his burden to establish a legitimate expectation of privacy in either the house, the RV, or the curtilage. Consequently, it is unnecessary to determine whether the search warrant affidavit for the premises set forth the requisite probable cause.

*B. Defendant's Statements to Agents Allman and McGowan*

Defendant argues the statements he gave to Allman and McGowan on September 9, 2009 must be suppressed because he did not knowingly and intelligently waive his Fifth Amendment rights when he gave them. In support of this argument, defendant contends that at the time he gave his statements he was under the influence of drugs and was suffering severe injuries to his head as a result of being hit by McGowan.

Statements made by a suspect while in custody must be preceded by Miranda warnings in order for those statements to be admissible. *United States v. Crowder*, 62 F.3d 782, 785 (6th Cir. 1995). Moreover, a defendant's waiver of his Miranda rights must be voluntary, knowing, and intelligent. *See Moran v. Burbine*, 475 U.S. 412, 421 (1986); *United States v. Miggins,* 302 F.3d 384, 397 (6th Cir. 2002). A determination of the voluntariness of a defendant's confession is viewed under the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *United States v. Canipe*, 569 F.3d 597, 602 (6th Cir. 2009). The government bears the burden of proof to show by a preponderance of the evidence through clear and positive testimony that a defendant voluntarily waived his *Miranda* rights. *Canipe*, 569 F.3d at 602 (citing *United v.*

*Worley*, 193 F.3d 380, 385 (6th Cir. 1999)); *see also Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

The inquiry as to whether there was a valid waiver has two dimensions. First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *See Moran v. Burbine*, 475 U.S. 412, 421 (1986); *Crowder*, 62 F.3d at 787.

In determining whether a confession has been elicited by means that are unconstitutional, this Court must consider "whether a defendant's will was overborne in a particular case." *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir.1994). Factors to consider in assessing the totality of the circumstances include the age, education, and intelligence of the accused; whether the accused has been informed of his constitutional rights; the length of the questioning; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as the deprivation of food or sleep. *Id.*

The defendant suffered a blow to the head from Agent McGowan's knee when he lunged back toward the creek bank while Agent McGowan was attempting to take the defendant into custody. The undersigned does not find Agent McGowan was acting maliciously, however. They suspected (correctly) that defendant had a gun with him when he fled into the woods. The officers were rightly concerned for their safety, and the defendant did not cooperate when he lunged back toward the creek bank (and the area where he had secreted the gun.) Agent McGowan was forced to physically subdue the defendant, though Agent McGowan intended to put his knee into the

9

defendant's back, not his face. While he received a bruise on his face and the experience was undoubtedly unpleasant at the time, defendant was examined by medical professionals who determined medical care was not required.

Thereafter, the agents asked defendant if he wanted dry clothes and allowed him to obtain some. They gave him something to eat and drink and treated him courteously. In fact, the defendant thanked the agents for treating him so well and stated that other officers had not treated him as well in the past. While defendant told the agents he had smoked the last of the methamphetamine earlier that day, the agents, who have observed suspects under the influence of drugs and alcohol many times, testified defendant did not appear under the influence at the time of the interview. Defendant answered questions appropriately and appeared to understand what was happening around him. His prior encounters with police undoubtedly have familiarized him with *Miranda* rights. Defendant is an adult. Allman read aloud and went through defendant's Miranda rights with him. Defendant said he understood his rights and he signed a written waiver form.

While the defendant has argued in his motion that he was too high and too beat up to knowingly and voluntarily waive his *Miranda* rights, the evidence indicates otherwise. I conclude the defendant voluntarily and intelligently waived his *Miranda* rights when he signed the written waiver to do so.

At some point in the interview, Allman asked the defendant if he cooked methamphetamine. In response to this particular question, the defendant stated, "I plead the fifth." Allman then asked the defendant if there were any drugs on the premises to which the defendant responded he had smoked the last of the methamphetamine earlier that day. At the suppression hearing, defendant argued that his statement, "I plead the fifth," constituted a

revocation of his *Miranda* rights waiver. The government argues it applied only to the particular question regarding cooking methamphetamine.

You cannot get a much clearer revocation of a waiver of the right to be silent than the statement, "I plead the fifth." In *Michigan v. Mosley*, 432 U.S. 96 (1975), the Supreme Court held that when a defendant invokes his Fifth Amendment right to remain silent, police have a duty under *Miranda* to immediately cease questioning. *See also Fleming v. Metrish*, 556 F.3d 520, 528 (6th Cir.), *cert. denied*, 130 S.Ct. 103 (2009). The *Mosely* court did not, however, preclude all custodial interrogation following a defendant's decision to stop talking to the police.

> a blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances, would transform the Miranda safeguards into wholly irrational obstacles to legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests.

Mosley, 423 U.S. at 102, 96 S.Ct. 321. The Court provided guidance as to circumstances which permit further questioning after a suspect has invoked his right to be silent. Police must have "scrupulously honored" a defendant's right to cut off questioning. *Id.* at 104; *see also Fleming*, 556 F.3d at 528. Police fail to scrupulously honor the defendant's right to cut-off questioning when police continue to question the defendant or "persist in repeated efforts to wear down his resistance and make him change his mind." *Mosley,* 423 US at 105-106*; Fleming, 556* F.3d at 528-29. Factors indicating police scrupulously honored the defendant's invocation of his right to remain silent include (1) immediately ceasing to question the defendant, (2) allowing the passage of a significant period of time and providing fresh Miranda warnings, and (3) excluding the subject of the previous interrogation in which the defendant invoked his Fifth Amendment right from the subsequent interrogation. *Mosley,* 423 US at 106*; Fleming, 556* F.3d at 529.

11

In the instant case, the agents continued to question the defendant immediately after he said, "I plead the fifth." There was no passage of time and no fresh Miranda warnings. While an argument could be made that the plaintiff intended for the invocation of his right to be silent to apply only to cooking methamphetamine as opposed to possessing it, that is a very fine hair to split; it is not at all clear that the defendant intended to invoke his Fifth Amendment right in this limited manner. Consequently, I will recommend that all statements of the defendant made after he said, "I plead the fifth," be excluded from evidence at trial.

*C. Items Found on and Near Defendant's Person*

Agents Allman and McGowan found a cell phone and a knife on the defendant's person when they apprehended him. Agent McGowan also found a pistol in the muddy creek bank where the defendant had discarded it. Defendant has not addressed suppression of these items, but out of an abundance of caution, I will. The officers, who knew what defendant looked like, saw defendant pull what they believed to be a pistol from defendant's waistband, and they knew he had a prior felony conviction. Thus they had probable cause to arrest him, and the cell phone and knife were found in a search incident to an arrest. *Arizona v. Gant*, 129 S.Ct. 1710, 1716 (2009) (search incident to arrest permits law enforcement to search the arrestee's person and the area within his immediate control for weapons and evidence.) (citing *Chimel v. California*, 395 U.S. 752 (1969)).

As for the pistol, defendant abandoned it when he discarded it in the mud of the bank, and once a person abandons property, he no longer has a reasonable expectation of privacy in that property. *United States v. Collis*, 766 F.2d 219, 222 (6th Cir. 1986) (defendant abandoned shoulder bag when he threw it over a fence while being chased by DEA officers, and, therefore, he

had no legitimate expectation of privacy in the bag.); *United States v. Dillard*, 78 Fed. Appx. 505 (6th Cir. Oct. 20, 2003) (defendant had no reasonable expectation of privacy in brief case when he abandoned it by throwing it to the side as police approached him). In the alternative, seizure of the pistol was properly made as a search incident to arrest since it was within the defendant's immediate area of control. *Gant*, 129 S.Ct. at 1716.

IV. Conclusion

Because the defendant did not have a legitimate expectation of privacy in the premises searched, it is RECOMMENDED that his motion to suppress as to evidence found on the premises be DENIED. The undersigned finds defendant voluntarily and intelligently waived his *Miranda* rights before law enforcement began questioning him, but defendant revoked this waiver when he said, "I plead the fifth." Consequently, it is RECOMMENDED defendant's motion to suppress his statements made to agents on September 2, 2009 before he said, "I plead the fifth" is DENIED, and his motion to suppress his statements made to agents on September 2, 2009 after he said, "I plead the fifth" is GRANTED.[1]

Dated: May 25, 2010                  s/William B. Mitchell Carter
                                                    UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).